A02A0072. RAZA v. SWISS SUPPLY DIRECT, INC. et al.
(568 SE2d 102)

POPE, Presiding Judge.

The trial court granted partial summary judgment to plaintiff Swiss Supply Direct, Inc. and against defendant Ali Raza. For the following reasons, we affirm the court's grant of partial summary judgment, but we reverse the court's dismissal of Raza's counterclaim against Swiss Supply.

Swiss Supply is a Florida business which sells rare watches and jewelry to dealers and to the general public. The president of Swiss Supply is Melvyn Franks. On December 22, 1999, Franks went to defendant Raza's house in Georgia to deliver various watches and jewelry. The men agreed that the price for the items would be $227,250. Franks prepared two invoices to reflect this agreement; both documents were signed by Raza and Franks.

Raza took the watches and jewelry and gave two checks, payable

---

to Swiss Supply, to Franks. The checks, dated December 22, 1999, totaled $227,250. Within 30 days of receiving the checks, Franks tried to negotiate both and they were dishonored.

Initially Raza admitted that he owed the money for the watches and jewelry. The record contains three letters in which Raza acknowledged the debt. Furthermore, Franks initiated criminal proceedings against Raza, and in sworn testimony from the criminal case, Raza conceded that he owed the money and that he planned to pay it back.

On August 28, 2000, when Raza had not repaid the money after more than eight months, Swiss Supply sued him in five counts, including breach of contract and fraud. In essence Franks claimed that Raza had given him worthless checks and that he had consistently failed to make good on his promises to repay him. Raza filed a counterclaim, seeking his attorney fees under OCGA § 13-6-11 for defending the action. Raza admitted receiving the watches and jewelry from Franks, but claimed that Franks had agreed to hold the checks until he sold the jewelry. Raza claimed that the jewelry was stolen from him and that he had told Franks that it would be necessary for him to sell property in order to repay the debt.

In December 2000, Raza filed a motion for leave to amend his answer and counterclaim and to add Franks and Rebecca Nachlas, the owners and operators of Swiss Supply, as additional parties, asserting claims of malicious prosecution, intentional infliction of emotional distress and Racketeer Influenced and Corrupt Organizations (RICO) Act violations. With the motion, Raza filed his proposed recast answer and counterclaim. On January 25, 2001, the court granted Raza's motion to file the pleading.

Swiss Supply filed its motion for partial summary judgment as to the $227,250, plus interest, which it claimed Raza owed. It also sought summary judgment on Raza's counterclaim. Included with the materials which Swiss Supply filed was Franks' affidavit in which he denied that there had been an agreement, as Raza claimed, that Franks wait to cash the checks.

On February 2, 2001, Raza filed his amended, recast and consolidated answer and counterclaim, claiming that he was entitled to receive damages from "the plaintiffs" for malicious prosecution, intentional infliction of emotional distress and civil RICO violations. On February 21, 2001, he amended the counterclaim again and specifically stated that Swiss Supply was jointly and severally liable for the claims in that pleading. The court granted Swiss Supply's motion for partial summary judgment on March 6, 2001.

1. In his first enumeration of error, Raza claims that the court erred in granting summary judgment because certain oral agreements regarding the checks were admissible and because he was not

a holder in due course under the Uniform Commercial Code. Raza claims that the arrangement was a "consignment deal" and that he gave the checks to Franks as good faith collateral. As the trial court determined, these arguments lack merit.

Pretermitting the issues addressed in *Mason v. Blayton*, 119 Ga. App. 203, 205 (166 SE2d 601) (1969), Raza has admitted under oath that he owed the money, and the trial court correctly construed this contradictory testimony against him. As stated above, the record contains one letter from Raza in which he promises to repay Franks and two more letters in which he outlines the terms of his plan for repayment. In fact, in Raza's affidavit filed in this case, he does not dispute the payment, but argues that Franks was to hold the checks until January 15, 2000. The superior court did not err in rejecting Raza's arguments and entering summary judgment in Swiss Supply's favor.

2. Secondly, Raza argues that the court erred in determining that no counterclaim remained pending against Swiss Supply after the grant of the motion for summary judgment. The court concluded that Raza's claims for malicious prosecution, intentional infliction of emotional distress and RICO violations were made solely against Franks and Nachlas and not against Swiss Supply, and that the only claim that remained pending against Swiss Supply was for reasonable attorney fees. In the absence of the underlying substantive action, the court reasoned, it was also necessary to grant summary judgment on this claim. Here, Raza argues that his amended, recast and consolidated answer and counterclaim alleged that all of the acts were done by the individuals as agents of the corporate defendant, and that all the claims were asserted jointly and severally against all of the defendants.

On this point, we agree with Raza. A review of the record shows that the court allowed Raza to file an amended, recast and consolidated answer and counterclaim and that he filed this pleading on February 2, 2001, asserting his new claims. In the answer portion of the pleading Raza generally asserted that he was entitled to receive damages from "the plaintiffs" for malicious prosecution, intentional infliction of emotional distress, consequential damages and civil RICO violations. He referred to the "wrongful and illegal acts" which the "Plaintiff and Mr. Franks and Ms. Nachlas" had perpetrated against him and claimed that he was entitled to a set-off of the amount he originally owed and to additional awards of money damages. He also alleged that he was entitled to punitive damages from "the Plaintiff, Mr. Franks and Ms. Nachlas." He further asserted that "the Plaintiff, Mr. Franks and Ms. Nachlas" acted in bad faith and were stubbornly litigious against him and that he was entitled to recover from them the expenses of his litigation and reasonable attorney fees.

In the counterclaim portion of the pleading, Raza claimed that defendants Franks and Nachlas were officers and owners of Swiss Supply and that Swiss Supply had submitted itself to the court's jurisdiction by bringing the action. Raza then set forth several pages of the particular actions of Franks and Nachlas which he claimed entitled him to relief. Raza then alleged again that the "defendants" maliciously prosecuted him, caused him to suffer severe emotional distress and to incur substantial attorney fees. He incorporated in the counterclaim the allegations contained in the answer portion and then set forth his claims of damages, including those for punitive damages arising from alleged violations of the Georgia RICO Act. He then set forth a prayer for relief against the "Defendants in Counterclaim," alleging damages for each of the torts he claimed were committed against him.

"Insofar as general rules of pleading are concerned, a counterclaim stands upon the same footing as an original claim." *Grant v. Fourth Nat. Bank &c.*, 229 Ga. 855, 859 (1) (194 SE2d 913) (1972). To this end, OCGA § 9-11-8 (a) (2) provides:

> any pleading which sets forth a claim for relief, whether an original claim, counterclaim, a cross-claim, or a third-party claim, shall contain: (A) A short and plain statement of the claims showing that the pleader is entitled to relief; and (B) A demand for judgment for the relief to which the pleader deems himself entitled.

With respect to the broad construction of pleadings, OCGA § 9-11-8 (f) states: "[a]ll pleadings shall be so construed as to do substantial justice." And in reviewing the sufficiency of this notice pleading

> the rules require that it be construed in the light most favorable to the plaintiff with all doubts resolved in her favor even though unfavorable constructions are possible. Not unless the allegations of the complaint disclose with certainty that the plaintiff would not be entitled to relief under any state of provable facts should the complaint be dismissed.

(Citation and punctuation omitted.) *Carley v. Lewis*, 221 Ga. App. 540, 542 (472 SE2d 109) (1996).

Using these rules of construction, we conclude that the trial court erred in dismissing Raza's counterclaim on the basis that he had failed to assert claims against Swiss Supply.[1]

---

[1] In reaching this conclusion, we do not analyze the sufficiency of Raza's claim after he filed his "First Amendment to Recast and Consolidated Answer and Counterclaims of

Because of our conclusion, we also find that the trial court's decision regarding Raza's claim for attorney fees under OCGA § 13-6-11 was incorrect. See *Steele v. Russell*, 262 Ga. 651 (2) (424 SE2d 272) (1993) ("[t]hese damages are available to a defendant only where the defendant has brought a counterclaim asserting a claim for relief wholly independent of any assertion as to plaintiff's bad faith, litigiousness, and/or harassment in bringing the underlying action").

Of course, our determination here signifies nothing regarding the merit of Raza's claims. And, despite our conclusion that the court erred in concluding that Raza had no viable counterclaim against Swiss Supply, this outcome does not affect the propriety or finality of the court's entry of partial summary judgment on Swiss Supply's motion. See OCGA §§ 9-11-54 (b); 9-11-13 (i); *Coxwell Tractor &c. Sales v. Burgess*, 192 Ga. App. 663, 664 (2) (385 SE2d 753) (1989).

*Judgment affirmed in part and reversed in part. Ruffin and Barnes, JJ., concur.*

DECIDED JUNE 27, 2002.

*Lynwood D. Jordan, Jr.*, for appellant.
*Banks, Stubbs, Neville & Cunat, John R. Neville*, for appellees.

Defendant." See generally *Feifer v. Reliance Kitchens, USA*, 189 Ga. App. 653, 654 (4) (377 SE2d 28) (1988); *Kelly v. Pierce Roofing Co.*, 220 Ga. App. 391, 393 (3) (469 SE2d 469) (1996).